**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| DENNIS F. ROQUEMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:04-0193 |
| | ) | JUDGE HAYNES |
| VANDERBILT UNIVERSITY MEDICAL CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM

Plaintiff, Dennis F. Roquemore, filed this action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. against the Defendant Vanderbilt University Medical Center, ("VUMC") his former employer. Plaintiff asserts a claim of retaliation for his termination that allegedly was due to his exercise of his FMLA rights. The parties have completed discovery.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No.16) contending that the Defendant had legitimate business reasons to terminate Plaintiff and made its decision to terminate him before Plaintiff's FMLA leave.[1]

In his response, Plaintiff asserts that his perceptions of the Defendant's stated reasons create material factual disputes to preclude an award of summary judgment.

For the reasons set forth below, the Court concludes that Plaintiff has not presented evidence that creates a material factual dispute to challenge the Defendant's proof that his termination was not caused by his FMLA leave.

---

[1]Plaintiff's complaint alleges, gender discrimination, but does not identify any statute for this claim. Any gender discrimination claim apparently is based upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., but Plaintiff has not exhausted his administrative remedies and that claim will not be considered.

## I. FINDINGS OF FACT[2]

On October 12, 1998, Ronald W. Hill, vice-president for the VUMC's strategic development office hired Plaintiff as a marketing manager. (Docket Entry No. 18, Attachment No. 1, Roquemore Deposition at p.19). Plaintiff's job duties were to research collect and synthesize data for particular services at VUMC, such as cardiovascular medicine, pediatric medicine or orthopedics. Id. Attachment No.10, Hill Deposition at p. 5. Roquemore and Sandy Cherry, another marketing manager had to develop and present business plans for new and existing medical center programs. Id. at Attachment No.1, Roquemore Deposition at 34-39, 46.

A business plan requires external and internal analysis for which market research is critical for policy decisions. Id. at Attachment No. 10 and Attachment No. 9, Cherry Deposition at p. 8. This process requires study of competitive and industry trends within a particular clinical area. Internal analysis focuses on a business' internal operations. Id. at Attachment No. 10 Hill Deposition at p. 6. These analyses enable the marketing manager to perform the strength, weakness, opportunity, and threat analysis (SWOT analysis) with physicians and senior administrative leaders within a particular clinical area. Id. The marketing manager must develop strategies for the service line and implement those strategies. Id. at 6, 7.

Within the first six months of Roquemore's employment, Hill had problems with

---

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Upon review of the record and under the applicable law, there are not any material factual disputes and this section constitutes findings of act under Fed. R.Cvi.P. 56(d).

Roquemore's work performance. Id at pp. 27-28; 41. On one occasion, an administrative assistant complained to Hill that Plaintiff had "chewed [her] out" when she knocked on Roquemore's closed door to tell him that he had an important telephone call. Id. at 30-31. At that time, Hill questioned other employees, who confirmed the administrative assistant's version. Id. at 30. Hill counseled Roquemore. Id. On another occasion, the senior president of Inforum, an outside consulting firm, complained to Hill of Roquemore's rudeness to an In forum customer representative and asked Hill to reprimand Roquemore for this behavior. Id. at 42.

Others in the office also complained to Hill. Cherry complained that Roquemore was not preforming his share of the work. Id. at Attachment No. 9, Cherry at 31-33. Roquemore failed to respond to other departmental requests. Id. at pp. 31-33; 39-40. Hill's concerns about Roquemore led to his recommendation that Roquemore seek assistance from Vanderbilt's Employee Assistance Program. Id. at 43, Attachment No. 10 at p.125.

In his performance evaluations, Roquemore consistently ranked himself higher in most categories than Hill, and Roquemore's final "negotiated" score were almost always lower than Plaintiff's self-evaluation. (Docket Entry No. 20, Hill Affidavit at ¶¶ 9 and 10 and Docket Entry No. 24, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 11).

In late July 2003, Kaplan and Hill discussed a significant restructure of the strategic development office. (Docket Entry No. 18, Attachment No.10, Hill Deposition at 39). Hill projected a restructuring that included the three marketing managers. (Docket Entry No. 20, Hill Affidavit at ¶11). The other two marketing managers would be promoted to a director with the third manager terminated with duties reassigned to the director and two new planning analysts.

Id. .[3]

Hill reported to Jeff Kaplan, associate vice-chancellor for health affairs. (Docket Entry No. 18, Attachment 10, Hill Deposition at p. 3). Kaplan instructed Hill's office to present an analysis of the officer's functions and role within VUMC for a restructuring. (Docket Entry No. 20, Hill Affidavit at ¶¶ 10 and 11). Kaplan also solicited the opinions of other VUMC representatives on each manager's performance, including individuals within that office. Id. at ¶¶ 5 and 9.

In that context, Hill reviewed Roquemore past performance, assessing his strengths and weaknesses. Hill evaluated Roquemore as significantly limited in his performance, especially in comparison to other office employees. Id. at ¶6. Hill's weighed as critical Roquemore's lack of any submission of business plans or an independently developed business plan for a patient care center in over a year. (Docket Entry No. 18, Attachment No. 1, Roquemore Deposition at pp. 45-46; Docket Entry No. 20, Hill Affidavit at ¶ ¶7). Hill also noted Roquemore was limited in his ability or willingness to perform necessary functions beyond data collection and cited his weaknesses in analyzing, synthesizing and presenting data. (Docket Entry No. 20, Hill Affidavit at ¶ 6). Hill also noted Roquemore had significant difficulties with others persons inside and outside the office. Id. at ¶ 7.

This evaluation process required each employee to submit a self-assessment. (Docket Entry No. 18, Roquemore Deposition at 99). As in earlier instances, Roquemore rated himself

[3]The department ultimately was reorganized in May 2004 in this manner. (Docket Entry No. 18, Attachment No. 10, Hill at 40). After Plaintiff's termination from employment in February 2004, his job was never filled, essentially eliminating that job as was intended in the reorganization. (Hill at 9-10, 40).

with all A or A-plus grades. Id. In Hill's view, Roquemore's self-assessment confirmed his inability to recognize and understand his limitations or his need for significant improvement. (Docket Entry No. 20 Hill Affidavit at ¶ 10).

On the morning of December 8, 2003, Roquemore sent an electronic mail message from his home computer to inform Hill that of a family emergency and his request to work at home. (Docket Entry No. 18, Attachment No. 10, Roquemore Deposition at 77 and Exhibit 3 thereto). Hill responded by e-mail as to why Roquemore's family emergency required him to work at home. Id. at pp at 79-80 and Exhibit 4. Roquemore did not respond. In his deposition, Roquemore explained that he could not be bothered with answering Hill's questions regarding his need to work from home. Id. Later that evening, Roquemore sent another email to Hill, explaining that his family's situation had changed and that he would be out of town and stating that he still would be able to work from some unspecified location. Id. at pp. 81-82 and Exhibit 4 thereto. Roquemore did not explain his whereabouts during the entire week of December 8.

Roquemore did not contact Hill again concerning his absences until Sunday, December 14, 2003 when he sent Hill another e-mail that he had picked up materials at the office to allow him work from wherever he was. Id. at Exhibit 18 thereto. Roquemore did not identify his location or return date. The only explanation was an undefined "family emergency." Id. at Exhibits 3 and 18 thereto.

Hill never authorized Roquemore's work outside the office. (Docket Entry No. 18 Attachment No.1, Roquemore Deposition at p. 86 and Attachment No. 10 Hill Deposition at pp. 33-34). Roquemore's absences occurred during the significant restructuring and self-assessment. In addition, in December 2003, his office was busy preparing certificate of need filings for

additional beds at various healthcare entities. Id. at pp. 114-115. Roquemore knew Hill needed his assistance to prepare these certificates of need. Id. at pp. 85-86; 90-91. Hill found this work overwhelming without any assistance from Roquemore. Id. at Attachment No. 10, Hill Deposition at pp. 33-34.

Without any contact for two weeks, Roquemore returned to the office, unannounced on December 22, 2003, the day of the office Christmas party. Id. at Attachment No. 1, Roquemore Deposition at pp. 92, 96-97. Roquemore's attendance at the Christmas party was his first notice to Hill of his return. Id. at 90-9 1,148. At that time Hill decided to terminate Roquemore due to his unimproved performance and extended absences without proper notice. Id. at 97, Attachment No. 1 Hill at pp. 31-32. When asked why he did not terminate Roquemore earlier, Hill explained that his management style was "one of mentoring and coaching," with the exception that Roquemore might be motivated to improve his performance and behavior. Id. at p. 28.

After his returning from the Christmas lunch, Hill wrote Lisa Ponton, the Associate Director of Human Resources to arrange a meeting with her, Roquemore and him. Id. at 40. Hill sought Ponton's advice on Roquemore's termination and over the next month and a half, they discussed it. Id. at 41. Hill decided not to await the reorganization and terminated Roqueomre's employment effective February 9, 2004 for his poor performance. (Docket Entry No. 18, Attachment No. 1 Roquemore Deposition Exhibit 6).

During Hill's and Ponton's discussions, Roquemore submitted his request for FMLA leave. On January 23, 2004, Vanderbilt's Occupational Health Center received Roquemore's request for a retroactive leave of absence pursuant to the FMLA. Id. at 102.

**B. CONCLUSIONS OF LAW**

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment `shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery.

Celotex Corp. v. Catrett, 477 U.S. 317, 326 , 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrating the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must

`present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is `genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof

is imposed.'

Liberty Lobby, 477 U.S. at 248, 252, 106 S. Ct. 2505, 91 L.Ed.2d at 211-212, 214 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court

requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing `the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in

order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Under the FMLA, Plaintiff must prove that: (1) his exercise of a right under the FMLA; (2) his exercise of those rights was known to VUMC; (3) he suffered an adverse employment decision; and (4) a causal connection between his protected activity and the adverse employment action. See Skrianc v. Great Lakes Power Serv. Co., 272 F 3d 309, 314 (6th Cir. 2001); Bryant v. Delbar Products. Inc., 18 F.Supp.2d 799, 809 (M.D.Tenn. 1998). If Plaintiff establishes a prima facie showing, VUMC bears the burden to articulate a legitimate non-discriminatory reason for Plaintiff's discharge. If VUMC articulates such a reason, then Roquemore must prove VUMC's cited reason to be untrue or a pretext for retaliation. Skrianc, 272 F.3d at 315.

VUMC's motion focuses on Roquemore's inability to establish a causal connection, between his termination and his FMLA leave request. VUMC cites its proof that Hill's decision to terminate Roqeumore's employment occurred before Roquemore's FMLA leave request. In Soletro v. National Fed'n of Indep. Bus., 130 F.Supp.2d 906, 912 (N.D. Ohio 2001), the plaintiff alleged her demotion in retaliation for her FMLA leave. The supervisor had informed the plaintiff of her demotion for inadequate job performance. Id. The court held that the fact that the demotion became effective one week after the plaintiff began her FMLA leave was "irrelevant" and dismissed the retaliation claim for lack of a causal connection. Id.

Here, Hill's decision to terminate Roqeumore was made before Roquemore's FMLA retroactive leave request. Roquemore does not present any evidence to dispute Hill's assertion of his decision to terminate him nor his discussion of termination with Ponton before Roquemore's FMLA request. It is undisputed that on December 22nd, Roquemore knew Hill was upset about his extended absences and knew Hill would have a "big talk with human resources" about him (Docket Entry No. 18, Attachment No. 1 Plaintiff Deposition at 97). On the same day, Hill discussed with Ponton, the best approach to terminate Roquemore. Id. at Attachment No. 1, Hill Deposition at pp. 40-41). VUMC granted Plaintiff a leave retroactively, after he applied on January 23, 2004, but the decision to terminate his employment for his failure to keep Hill informed had been made by that time.

Plaintiff relies on the proximity in time between his January 23rd FMLA request and his February 9th discharge. Yet, temporal proximity alone is insufficient to create a genuine issue of material fact. Stubl, 984 F.Supp. at 1090; Little v. BP Exploration & Oil Co., 265 F.3d 357, 363-64 (6th Cir. 2001). After a motion for summary judgment is filed, "[p]laintiff cannot rely on

the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1389 (6th Cir. 1993); Vine v. County of Ingham, 884 F. Supp. 1153, 1158-60 (W.D. Mich. 1995).

Even if Roquemore's proof established a prima facie case, VUMC has articulated a legitimate non-discriminatory reason for Roquemore's termination and Roquemore's proof does not show these reasons to be pretextual or untrue. To demonstrate pretext, Plaintiff must "do more than simply impugn the legitimacy of the asserted justification." Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 804 (6th Cir. 1994). In Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994), the Sixth Circuit required the plaintiff to prove that the reasons either (1) had no basis in fact, (2) did not actually motivate his discharge, or (3) were insufficient to motivate the discharge. Plaintiff has not met this burden.

Accordingly, the Defendant's motion for summary judgment should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 8th day of August, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge



Case 3:04-cv-00193 Document 42 Filed 08/09/05 Page 14 of 14 PageID #: 14